IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| GABRIEL ROSA-DIAZ, | ) | Civil Action No. 3: 14-cv-0005 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | United States District Judge |
| v. | ) | Kim R. Gibson |
| | ) | |
| SGT. DOW, et al., | ) | United States Magistrate Judge |
| Defendants. | ) | Cynthia Reed Eddy |

REPORT AND RECOMMENDATION

**I.     Recommendation**

For the reasons that follow, it is respectfully recommended that the Partial Motion to Dismiss filed by Defendants (ECF No. 31) be granted. It is further recommended that Plaintiff not be provided leave to amend as it would be futile.

**II.    Report**

**A.     Relevant and Material Facts[1]**

Plaintiff, Gabriel Rosa-Diaz ("Plaintiff" or "Rosa-Diaz") is a state prisoner committed to the custody of the Pennsylvania Department of Corrections ("DOC") and currently confined at the State Correctional Institution in Marienville, Pennsylvania ("SCI-Forest"). The events giving rise to this lawsuit arise out of a fight Rosa-Diaz had with fellow inmate while he was confined at SCI-Cresson. As a result of the incident, Rosa-Diaz was issued two misconducts and was assessed for the other inmate's medical expenses.

On January 9, 2014, Rosa-Diaz initiated this Section 1983 prisoner civil rights action in which he raised multiple Eighth Amendment and Due Process claims in connection with the

---

[1]     As the law requires, all disputed facts and inferences are resolved in favor of Plaintiff, the non-moving party.

1

misconducts he received and the assessment process. The Complaint is 29 pages long with seven (7) purported claims against ten (10) defendants: Sgt. Dow, C/O Sheridan, K. Bearjar, R. Reed, A. Beck, K. Cameron, D. Varner, R.M. Lewis, John and Jane Does #1-3,[2] and J. Wetzel. Rosa-Diaz seeks compensatory and punitive damages.

According to the Complaint, on April 8, 2012, Inmate Robinson (who was housed in a different wing than Rosa-Diaz) was allowed to enter E Unit, B wing and confronted Rosa-Diaz. The men exchanged words because, according to the Complaint, Robinson was trying to extort money from Rosa-Diaz and threatened to stab him. (ECF No. 5, ¶¶ 13 - 29.) Rosa-Diaz claims that he reported this to Sgt. Dow that evening and told Sgt. Dow that he did not feel comfortable with Robinson continuing to be allowed to enter the B Wing. (*Id*. at ¶ 31.)

The next evening, at approximately 7:40 pm, Robinson entered the B Wing, walked past C/O Sheridan, and again approached Rosa-Diaz, who was sitting at a table playing dominos. Robinson started to attack Rosa-Diaz with two shanks; Rosa-Diaz tried to back away, but then began to defend himself. He punched Robinson and then grabbed a shank that Robinson had dropped and stabbed Robinson. (*Id*. at ¶¶ 34 - 44.)

Rosa-Diaz claims that C/O Sheridan initially "took off" in the other direction and did not come to help. At some point during the fight, Sgt. Dow grabbed Rosa-Diaz, at which time Rosa-Diaz yelled, "Get the fuck off me, you set me up." Rosa-Diaz contends that he then pulled away from Sgt. Dow and stood his ground as Sgt. Dow and other officers surrounded him. Rosa-Diaz eventually dropped his shank. Rosa-Diaz was bleeding and was taken to medical for his head wound. (*Id*. at ¶¶ 45 - 48.)

---

[2] The John and Jane Doe defendants remain unnamed and unserved.

2

Rosa-Diaz received two (2) misconducts - one for fighting, written by C/O Sheridan, A800682; and another for threatening an employee, written by Sgt. Dow, A800686.[3] On April 12, 2012, a hearing on Misconduct A800682 was held before Hearing Examiner, Robert Reed who found Rosa-Diaz guilty of fighting, refusing to obey an order, and possession of contraband. Rosa-Diaz was sanctioned to a total of 270 days disciplinary time effective April 9, 2012, and it was recommended that Rosa-Diaz's inmate account be assessed "for costs associated with the incident."

On April 16, 2012, a hearing on Misconduct A800686 was held before Hearing Examiner Robert Reed who found Rosa-Diaz guilty of threatening an employee or their family with bodily harm. Rosa-Diaz was sanctioned to "90 days DC consecutive."

Rosa-Diaz appealed his misconducts, arguing that he acted in self-defense and that Sgt. Dow was responsible for his injuries because he gave Robinson permission to cross-over into B Wing. PRC affirmed the Hearing Examiner's determinations of guilt. PRC also received additional intelligence from Security that Rosa-Diaz was in possession of one of the shanks before the incident.

On April 13, 2012, Rosa-Diaz filed a Grievance (#408509) stating that due to Sgt. Dow's lack of security in allowing Robinson to cross over from A wing to B wing, he was attacked and suffered multiple stab wounds. Defendant Bearjar, the Unit Manager, denied the grievance on April 25, 2012, explaining that he spoke with C/O Kriss, who advised that Inmate Robinson was an IBO[4] representative for the activities department and was to be conducting IBO related

---

[3] Misconduct A800866 was originally written as A908311 but was dismissed without prejudice due to not being signed by the Shift Commander.

[4] According to Defendants, "IBO" stands for Inmate Betterment Organization, which was SCI-Cresson's Inmate Social Service Organization. See Defs' Br. at n. 5.

3

business on B wing at the time of the incident. Bearjar also confirmed that there was no policy violation by staff as to Inmate Robinson's presence on B wing for IBO related business as there were no listed separations between Rosa-Diaz and Robinson. On appeal, Superintendent Cameron stressed that inmates are routinely permitted access to adjacent wings to conduct such activities and stated "[t]here was no indication of any problems between you and the other inmate, nor had you alerted staff to any concerns." On June 5, 2012, Defendant Varner, Chief Grievance Officer, upheld the decisions of the Grievance Officer and the Facility Manager in denying Rosa-Diaz's grievance and request for relief.

Rosa-Diaz was provided with an itemized bill for Robinson's medical expenses on May 23, 2012, and he requested a hearing on the assessment, which was held on July 10, 2012. Plaintiff was assessed $31,414.30, as reflected in the relevant *Holloway*[5] hearing documents and Opinion, which are attached to the Complaint. (*See* ECF No. 5-6.)

Plaintiff appears to be asserting various Eighth Amendment claims against Sgt. Dow - that Dow was responsible for Robinson coming into the unit and/or that Dow failed to take action on April 8, 2012, after allegedly being put on notice of Robinson's threat to stab Rosa-Diaz. Plaintiff also alleges that Dow and Sheridan issued false misconducts and that Hearing Examiner Reed was biased in finding Rosa-Diaz guilty of the misconducts. Plaintiff also faults Hearing Examiner Reed and the other remaining defendants (Cameron, Beck, Lewis, Wetzel,

---

[5] In *Holloway v. Lehman*, 671 A.2d 1179 (Pa. Cmwlth. 1996), the Pennsylvania Commonwealth Court held that prisoners could challenge the deductions from their prison accounts where the Department of Corrections, in the complete absence of any due process, assessed monetary damages against inmates for the destruction of prison property and began deducting funds from their accounts after the appeal period had expired from misconduct decisions finding them liable for damages.

Varner and Bearjar) for failing to accept his version of events in connection with their handling of his grievance, misconducts, and related appeals.[6]

Rosa-Diaz also brings claims under Pennsylvania common law against Defendants Dow and Sheridan for negligence (Count Five) and intentional infliction of emotional distress (Count Six).

On June 13, 2014, Defendants filed a Partial Motion to Dismiss (ECF No. 23), to which Plaintiff responded in opposition. (ECF No. 26.) Shortly thereafter, Plaintiff sought leave to file an Amended Complaint. Rosa-Diaz was given leave to file an Amended Complaint and on August 15, 2014, he filed a document entitled "Amendments to Original Complaint," a single page, letter format document which contains no additional factual allegations, but states the following, *in toto*:

> Your Honor,
>
> This new prison i am in is refusing to give me my legal papers and thus no inmate whom is willing to help me can help me.
>
> A prisoner here told me to write you and explain this to you. He also told me not to panic because the District Attorney all they do is lie.
>
> This same inmate told me to ask you to make the following amendments to my original complaint: "To erase that all the named defendants had "contemperaneous knowledge" and to please enter that all of the defendants had "actual knowledge" were they all knew without a doubt what they were doing.
>
> I was told to explain to you that I do not know how to number the paragraphs for the changes of words, because the co's refuse to give me my legal paperwork.

---

[6]     In Count One, Rosa-Diaz alleges a "violation of Eighth Amendment Failure to Protect" against Sgt. Dow; in Count Two, a "violation of Eighth Amendment Deliberate Indifference" against Sgt. Dow and C/O Sheridan; in Count Three, a claim for "supervisor liability under § 1983) against Defendants Bearjar and Cameron; in Count Four, a "denial of due process violation under the Fourteenth Amendment," against Defendant Reed; in Count Seven, a "violation of 14th Amendment due process rights" against all defendants as a result of funds being deducted from Rosa-Diaz's inmate account.

5

Please rule on the original complaint as filed with the amended change of words, as all the defendants did have <u>actual knowledge</u>.

(ECF No. 30).

The "amendment" does not assert any new or different facts. The Court notes, however, that Plaintiff wishes to allege that Defendants had "actual knowledge" rather than "contemporaneous knowledge." Such change is duly noted. In all other respects, the original Complaint will remain the operative complaint.[7]

Thereafter, Defendants filed a second Partial Motion to Dismiss, with a brief in support, pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF Nos. 31 and 32). Rosa-Diaz has responded in opposition. (ECF No. 34.) The matter is ripe for disposition.

**B**.   **Standard Of Review For Motions to Dismiss**

1.   *Pro Se Litigants*

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

---

[7]   " '[T]he amended complaint 'supersedes the original and renders it of no legal effect, <u>unless the amended complaint specifically refers to or adopts the earlier pleading</u>'." *West Run Student Housing Associates, LLC v. Huntington Nat. Bank,* 712 F.3d 165, 171 (3d Cir. 2013) (emphasis added) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996)).

In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

2. *<u>Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard</u>*

A motion to dismiss pursuant to Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must

contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must conduct a three-step analysis when considering a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court

generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Attached to the Complaint are the relevant misconducts, grievances and *Holloway* hearing documents. Accordingly, the Court has considered these documents without the necessity of converting the motion to dismiss into a motion for summary judgment.

### C. Discussion and Analysis

Defendants have filed the instant Partial Motion to Dismiss arguing that (i) Plaintiff failed to exhaust his claims against C/O Sheridan; (ii) Plaintiff failed to state a claim for supervisory liability against Bearjar, Cameron, Wetzel, Reed, Beck, Varner, and Lewis; (iii) Plaintiff failed to state a due process claim; and (iv) Plaintiff's state tort claims are barred by sovereign immunity.

#### 1. Failure to Exhaust

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA itself does not have a "name all defendants" requirement. *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)). However, the United States Court of Appeals for the Third Circuit has found that where the inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective, claims against an accused individual are procedurally defaulted. *Spruill v. Gillis*, 372 F.3d at 234. *See Woodford v. Ngo*, 548 U.S. at 90-91 (exhaustion of administrative remedies under the PLRA requires "using all steps that the agency holds out," and "demands compliance with an agency's deadlines and other critical procedural rules.")

Attached to the Complaint is Plaintiff's grievance. (ECF No. 5-1; ECF No. 32-1.) The grievance does not mention Defendant Sheridan. Therefore, the Court finds that Plaintiff has procedurally defaulted with regard to any claims against Defendant Sheridan and recommends that all claims against Defendant Sheridan be dismissed.

2. Lack of Personal Involvement

Defendants also contend that the Complaint fails to allege any facts showing that many of the Defendants were personally involved in any constitutional misconduct. As to Defendants Bearjar, Cameron, and Wetzel, Rosa-Diaz does not allege that any of these defendants were present or had information about Robinson; rather he alleges that Cameron and Bearjar "failed to ascertain that Dow and Sheridan were properly trained" in DOC Unit and housing policies. (ECF No. 5, Count III - ¶ 177.) As to Wetzel, Rosa-Diaz alleges that he failed to properly screen, train, and supervise Dow, Sheridan, Bearjar, Cameron, Varner, Lewis, and Beck in housing policies, use of force to protect inmates, and in not filing "false, inaccurate or misleading / misrepresented misconduct reports or grievance response (sic).") (*Id*. at ¶¶ 179-180.)

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan,* 47 F.3d 628, 638 (3d Cir. 1995). Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which

underlie a claim. *See Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077 (3d Cir. 1976). As explained in *Rode:*

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Rode,* 845 F.2d at 1207.

*See also Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307 (3d Cir. 2014).

Inmates also do not have a constitutional right to a prison grievance system. *Simonton v. Tennis*, 437 F. App'x 60, 61 (3d Cir. 2011) (citing *Jones v. North Carolina Prisoners Labor Union*, 433 U.S. 119, 138 (1977)); *Speight v. Sims*, No. 08–2038, 2008 WL 2600723 at *1 (3d Cir. 2008) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. *See also Brooks v. Beard,* 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct); *Alexander v. Gennarini,* 144 Fed. Appx. 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability).

A review of Plaintiff's allegations indicates that Rosa-Diaz is attempting to establish liability against Bearjar, Cameron, Wetzel, Varner, Reed, and Lewis, either on the basis of their respective supervisory capacities within SCI–Cresson or based upon their involvement in the handling of Plaintiff's administrative grievances and appeals. "A bare allegation of 'rubber stamping' does not suffice to establish a cognizable constitutional violation." *Simonton*, 437 F. App'x at 61. Further, a prison official's secondary review of an inmate's grievance or appeal is

11

not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right. *Id.* at 61 (citing *Rode*, 845 F.2d at 1207-08).

Because the Complaint does not allege personal involvement by Defendants Bearjar, Cameron, Wetzel, Reed, Beck, Varner, and Lewis all claims against them should be dismissed.

3. <u>Due Process</u>

a. *False Misconducts*

It appears that Rosa-Diaz is attempting to assert a due process claim against Dow and Sheridan based on the allegedly false misconduct reports these defendants issued. It is well settled that a claim that a misconduct report was false, standing alone, does not violate a prisoner's constitutional rights, so long as procedural due process protections were provided. *Richardson v. Sherrer*, 344 F. App'x 755, 757–58 (3d Cir. 2007); Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); *Smith v. Mensinger,* 293 F.3d 641, 653–54 (3d Cir. 2002).

As to Hearing Examiner Reed, Rosa-Diaz complains about his impartiality, not the notice or other procedural issues in the hearing. Rosa-Diaz asserts, without support, that Hearing Examiner Reed was biased simply based upon the fact that Rosa-Diaz was found guilty. The Complaint contains no allegations to support Rosa-Diaz's bald assertion that he was denied an impartial hearing.

The documents attached to the Complaint reflect that Rosa-Diaz was provided with due process. As to Misconduct A800682 (fighting), Rosa-Diaz was given notice, submitted his written version, and was given an opportunity to provide a verbal statement at the hearing held on April 12, 2012, although he chose not to offer anything. (ECF No. 5-2; ECF No. 32-1.) In finding Rosa-Diaz guilty, Hearing Examiner Reed explained, as follows:

> HEX believes the staff member's written report over the denial of inmate ROSA-DIAZ that ROSA-DIAZ did in fact engage in a fight. Inmate admitted in his written statement that he punched Robinson three times. Robinson then dropped a shank. ROSA-DIAZ then obtained a contraband weapon and used it to stab Robinson in an attempt to protect his own life. Inmate states clearly that he had possession of the contraband weapon and used it to stab Robinson. Inmate was given at least one direct order to stop. He did not obey that direct order.

On appeal, Rosa-Diaz did not challenge the misconduct hearing process, but challenged only the results. He argued that his actions were justified because he was acting in self-defense.

Likewise, with Misconduct A 800686, Rosa-Diaz was given notice and was given an opportunity to provide a verbal statement at the hearing held on April 16, 2012. In finding Rosa-Diaz guilty, Hearing Examiner Reed stated, "HEX believes the staff member's written report over the denial of inmate ROSA-DIAZ that ROSA-DIAZ did make a threatening statement to the officer while a weapon was physical (sic) present. Inmate clearly stated to the officer "you had better fucking let me go." Clearly a threatening statement while the inmate held a weapon." (ECF No. 5-4; ECF No. 32-1.)

On appeal, Rosa-Diaz did not challenge the misconduct hearing process, but again challenged only the results. He argued that he did not have a weapon in his hand and that it was other inmates standing in the vicinity who had used threatening language directed at Sgt. Dow.

For these reasons, it is recommended that Rosa-Diaz's due process claims based be dismissed.

b. *Holloway* assessment hearing

Rosa-Diaz contends that Defendants Reed, Beck, Lewis, and Wetzel violated his due process rights in connection with his *Holloway* assessment hearing held in July 2012.

Under Pennsylvania law, the DOC is entitled to assess inmates who are found guilty of a Class I or Class II misconduct for reimbursement of expenses incurred as a result of

the inmate's misconduct. 37 Pa. Code § 93.10(a). The DOC's decision to charge an inmate's prison account is an agency "adjudication" as defined in 2 Pa. C.S. § 101; *Holloway v. Lehman,* 671 A.2d 1179 (Pa. Cmwlth. 1996). "As such, an inmate is entitled, after reasonable notice, to a hearing." *Jerry v. Dep't of Corrections,* 900 A.2d 112, 116 (Pa. Cmwlth. 2010). The only issue in a *Holloway* hearing is whether the amount of the assessment is correct and supported. *Id*. at 115-116.

In this case, the Complaint, as well as the Exhibits attached thereto, reflect that Rosa-Diaz was give notice of the itemized medical charges and the assessment hearing, and that he fully participated in the hearing. Rosa-Diaz chose not to challenge the amount of assessment but rather focused upon his self-defense claim to the underlying misconduct charge. This contention is not a valid ground for challenging the assessment of his inmate account. *Jerry*, 990 A.2d at 115. A review of the Complaint and Plaintiff's own exhibits reflect that there was no violation of Rosa-Diaz's due process rights at the *Holloway* assessment hearing.

Accordingly, it is recommended that this claim be dismissed without prejudice.

4. <u>State law claims</u>

It is recommended Rosa-Diaz's claims for negligence and intentional infliction of emotional distress be dismissed pursuant to Pennsylvania's Sovereign Immunity doctrine, which protects employees and agents of the state from damage claims if they were acting within the scope of their duties and the claims do not meet one of the statutorily enumerated exceptions.[8] This immunity applies to both negligent and intentional torts, including intentional infliction of emotional distress, and applies to claims asserted against officials in their individual capacities.

---

[8] *See* 1 Pa.C.S.A. § 2310; 42 Pa.C.S.A. § 8522; *Kidd v. Pennsylvania*, 37 F. App'x 588, 592 n. 3 (3d Cir.2002); *Dill v. Oslick*, No. 97–6753, 1999 WL 508675, at *4 (E.D.Pa. July 19, 1999).

14

*Kidd v. Pennsylvania,* 37 F. App'x 592 n.3 (3d Cir. 2002). Thus, because the Complaint alleges that Defendants were employees of the state acting within the scope of their duties,[9] and as there is no argument that one of the statutory exceptions applies, Counts V and VI should be dismissed.

**D.    Futility**

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has twice provided Plaintiff with an opportunity to amend, (see Order of June 25, 2014 (ECF No. 25) and Text Order of July 15, 2014), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick,* 481 F. App'x 34, 36 (3d Cir. 2012). For the reasons discussed *supra*, it is recommended that Plaintiff not be granted leave to amend.

**III.    Conclusion**

For the reasons stated above, it is respectfully recommended that the Partial Motion to Dismiss filed by Defendants (ECF No. 31) be granted. The only claim remaining in this case should be the Eighth Amendment failure to protect claim against Sgt. Dow.[10]

It is further recommended that Rosa-Diaz not be provided leave to amend as it would be futile.

---

[9]    The Complaint states that each defendant "at all times relevant [was] acting and continuing to act under color of state law." Complaint, at ¶¶4 - 12.

[10]    Defendants did not seek to dismiss this claim.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

Dated: February 23, 2015

s/ Cynthia Reed Eddy  
Cynthia Reed Eddy  
United States Magistrate Judge

cc.    GABRIEL ROSA-DIAZ  
FH-7313  
SCI Forest  
PO Box 945  
Marienville, PA 16239  
(via U.S. First Class Mail)

Mary Lynch Friedline  
Office of the Attorney General  
(via ECF electronic notification)